**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERT K. and MONICA K., on behalf of JOHN K., a minor, </br></br>     Plaintiff,</br></br>    v.</br></br>HEALTH CARE SERVICE CORPORATION d/b/a BLUE CROSS BLUE SHIELD OF ILLINOIS,</br></br>     Defendant. | )</br>)</br>)</br>)</br>)</br>)</br>) No.</br>)</br>)</br>)</br>)</br>)</br>)</br>) |

**COMPLAINT**

Plaintiffs, ROBERT K. and MONICA K., on behalf of JOHN K., by and through their attorneys, MARK D. DE BOFSKY, MARIE E. CASCIARI, and DE BOFSKY LAW, LTD., P.C., state the following as their Complaint against Defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois ("HCSC"):

**INTRODUCTION**

1. This case is brought under the Employee Retirement Income Security Act of 1974 ("ERISA") to enforce John K's rights under the health plan in which he is a participating beneficiary and to enjoin HCSC from terminating coverage for medically necessary Applied Behavioral Analysis ("ABA") therapy and other behavioral therapy deemed medically necessary by the medical professionals who have treated John K.

2. John K, the son of Robert K. and Monica K., was born in 2009 and suffers from an Autism Spectrum Disorder. Since 2019, John K has been under the care of Anna Ivanenko, M.D., and KGH Autism Services, along with physicians at Lurie Children's Hospital in Chicago, illinois.

3. John K has an extensive treatment regimen that includes medications and behavioral therapy. In order to improve John K.'s behavior and preserve gains he had achieved in controlling inappropriate behavior; and to prevent worsening of behavioral issues and aggression, John K's doctors and therapy providers have maintained that he requires ongoing behavioral therapy have provided letters of medical necessity explaining the rationale for ongoing behavioral therapy.

4. A reduction in the amount of behavioral therapy provided to John K occurred in 2021 when Defendant refused to approve reimbursement for more than 4 hours per week of ABA therapy. When the reduction in therapy occurred, it resulted in a loss of skills John K had previously achieved, along with worsened and worsening behavioral issues, including aggression, self-harm, and destruction of property; and John K's treatment providers have reiterated the necessity of maintaining at least 15 hours of ABA and other behavioral therapy each week.

5. On August 19, 2021, following an initial unsuccessful appeal, an independent external review of Plaintiffs' claim seeking 15 hours per week of ABA therapy overturned Defendant's approval of no more than 4 hours per week of such therapy for a period covering January 10, 2021 through July 10, 2021.

6. Notwithstanding the determination made by the independent review organization on August 19, 2021, and again on September 24, 2021, Defendant denied pre-approval for 15 hours per week of ABA therapy for John K for the period of September 6, 2021 through March 6, 2022.

7. Following that determination, the parties litigated Plaintiff's entitlement to benefits – *Robert K., etc. v. Health Care Service Corp.,* No. 22-cv-597 (N.D. Ill.) (Judge Kocoras), which resulted in a confidential settlement. Thereafter, Plaintiffs sought approval of additional ABA and other behavioral therapy benefits commencing on September 7, 2022. However, on September 2,

2022, Defendant denied Plaintiffs' claim seeking behavioral therapy covering a period from September 8, 2022 through March 8, 2023. The basis of the denial were false assertions that John K has not gotten better with treatment and that "Care is being used to keep you safe only."

8. Plaintiffs appealed Defendant's determination pursuant to 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1; however, their appeal was unsuccessful. Plaintiffs maintained that the behavioral therapy that had been prescribed was necessary to preserve the gains John K had made and to prevent deterioration of his behavior; and that coverage for such treatment was mandated by 215 ILCS 5/356z.14; however, Defendant's denial of Plaintiffs' appeal failed to address the issues raised in the appeal and merely reiterated the grounds for denial that had been previously stated. The issuance of a denial of Plaintiffs' appeal on January 20, 2023 makes this matter ripe for judicial adjudication.

## THE PARTIES, JURISDICTION, AND VENUE

9. Robert K, Monica K, and John K live in Park Ridge, Illinois, which is located within the Northern District of Illinois. Robert K and Monica K are the parents of John K, who is a minor, and are jointly responsible for payment of the expenses of his medical treatment.

10. Defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois, which is headquartered in Chicago, Illinois, underwrites and administers health care plans, including the plan at issue in this action, which was issued to Parkside Investments LLC, Robert K's employer.

11. This Court has jurisdiction over this action pursuant to ERISA §§ 502(e)(1) and (f) (29 U.S.C. §§ 1132(e)(1) and (f)), which allows the district court to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case

3

involves a group health plan sponsored by Parkside Investments LLC for the benefit of its employees and their dependents, which include Monica K and John K.

12. Jurisdiction in this Court is also proper pursuant to 28 U.S.C. § 1331, which provides subject matter jurisdiction over actions that arise under the laws of the United States.

13. Venue is proper in this District pursuant to ERISA § 502(e)(2), *codified at* 29 U.S.C. § 1132(e)(2), because the health care plan is administered in this District, the breach of the health care plan took place in this District, and Defendant HCSC resides in or may be found in this District.

## FACTUAL BACKGROUND

### Relevant Health Care Plan Provisions

14. John K receives his health care coverage as a beneficiary (as that term is defined by 29 U.S.C. § 1002(8)) of Robert K, who receives health care coverage as a participant (as that term is defined by 29 U.S.C. § 1002(7) under a benefit plan sponsored by Parkside Investments LLC (Group/ID PH3175/000849274928). Monica K. is also a beneficiary of that Plan. The benefit plan at issue is an "employee welfare benefit plan" under ERISA § 1003, 29 U.S.C. § 1002(1), (the "Plan"). At all relevant times, HCSC has served as the insurer and administrator of the Plan and benefits thereunder

15. The Plan reimburses services that are "medically necessary," which is defined to mean: "that a specific medical, health care, supply or Hospital service is required, for the treatment or management of a medical symptom or condition and that the service, supply or care provided is the most efficient and economical service which can safely be provided."

16. The Plan is also subject to the laws of the State of Illinois, which include mandates specific to autism spectrum disorders as set forth in 215 ILCS 5/356z.14. That statute includes the

following definitions:

"Autism spectrum disorders" means pervasive developmental disorders as defined in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders, including autism, Asperger's disorder, and pervasive developmental disorder not otherwise specified.

"Medically necessary" means any care, treatment, intervention, service or item which will or is reasonably expected to do any of the following: (i) prevent the onset of an illness, condition, injury, disease or disability; (ii) reduce or ameliorate the physical, mental or developmental effects of an illness, condition, injury, disease or disability; or (iii) assist to achieve or maintain maximum functional activity in performing daily activities.

"Treatment for autism spectrum disorders" shall include the following care prescribed, provided, or ordered for an individual diagnosed with an autism spectrum disorder by (A) a physician licensed to practice medicine in all its branches or (B) a certified, registered, or licensed health care professional with expertise in treating effects of autism spectrum disorders when the care is determined to be medically necessary and ordered by a physician licensed to practice medicine in all its branches:

(1) Psychiatric care, meaning direct, consultative, or diagnostic services provided by a licensed psychiatrist.

(2) Psychological care, meaning direct or consultative services provided by a licensed psychologist.

(3) Habilitative or rehabilitative care, meaning professional, counseling, and guidance services and treatment programs, including applied behavior analysis, that are intended to develop, maintain, and restore the functioning of an individual. As used in this subsection (i), "applied behavior analysis" means the design, implementation, and evaluation of environmental modifications using behavioral stimuli and consequences to produce socially significant improvement in human behavior, including the use of direct observation, measurement, and functional analysis of the relations between environment and behavior.

(4) Therapeutic care, including behavioral, speech, occupational, and physical therapies that provide treatment in the following areas: (i) self care and feeding, (ii) pragmatic, receptive, and expressive language, (iii) cognitive functioning, (iv) applied behavior analysis, intervention, and modification, (v) motor planning, and (vi) sensory processing.

**John K's Health and Medical Needs**

17. John K has autism spectrum disorder, which was diagnosed in 2011. The external reviewer wrote in the letter determining the medical necessity of 15 hours of ABA therapy per week:

"The most important thing about autism spectrum disorder (ASD) is that there is, in fact, no cure for this disorder; however, currently, there are many claims of pharmacological and dietary therapies and behavioral interventions that are said to improve outcome or even lead to "cure" or "recovery." It continues to remain a challenging condition for children and their families. Research conducted on many of these treatment modalities is limited and, consequently, sufficient evidence does not exist to support their use. The primary aim of this paper was to search for the evidence of the efficacy of each treatment for autism till now. We reviewed different treatment modalities and randomized clinical trials on each treatment to look for the evidence. Although there are interventions that may be effective in alleviating some symptoms and improving skills that help autistic persons lead more productive lives, proven benefits were observed only with applied behavioral analysis (ABA) and some psychopharmacologic agents." (Medavarapu, S., et al. 2019).

"Autism spectrum disorder is characterized by patterns of delay and deviance in the development of social, communicative, and cognitive skills that arise in the first years of life. Although frequently associated with intellectual disability, this condition is distinctive in its course, impact, and treatment. Autism spectrum disorder has a wide range of syndrome expression and its management presents particular challenges for clinicians. Individuals with an autism spectrum disorder can present for clinical care at any point in development. The multiple developmental and behavioral problems associated with this condition necessitate multidisciplinary care, coordination of services, and advocacy for individuals and their families. Early, sustained intervention and the use of multiple treatment modalities are indicated." (Volkmar, F., et al. 2014).

"Individuals with Autism Spectrum Disorder present with unique characteristics, and the interventions designed to address associated challenging behaviors must be highly individualized to best meet their needs and those of their families. This article reviews systems of care to support the child, adolescent, or adult with Autism Spectrum Disorder and/or Intellectual Disability. The review describes mental health/behavioral health services, Intellectual Disability and other support systems, and the systems involved in a child and adolescent's life and transition to adulthood. The types of systems and services, as well as barriers, are delineated with a brief listing of Web sites and references." (Lubetsky, M.J., et al. 2014).

"Autism spectrum disorder is a diagnosis that includes significant social communication deficits/delays along with restricted patterns of interests and behaviors. The prevalence

of this diagnosis has increased over the past few decades, and it is unclear whether this is solely attributable to the increased awareness of milder forms of the disorder among medical providers. The current treatment options for the core symptoms of autism are limited to psychosocial therapies, such as applied behavior analysis." (Defilippis, M., et al. 2016).

18. John K's treating doctors and therapists, including doctors who treated John K. at Lurie Children's Hospital in Chicago, Illinois, in June 2022 for injuries John K. sustained due to self-injurious behavior, have provided letters of medical necessity and treatment plans that have established the necessity for his receipt of ongoing ABA therapy for the foreseeable future. A treatment plan from KGH Therapy dated September 1, 2021, described a decline in John K's behavior when ABA therapy was reduced in 2020 and earlier in 2021 before it was found medically necessary; and ongoing treatment plans have also warned of likely deterioration in John K.'s behavior if behavioral therapy is reduced or eliminated such as inappropriate behavior and safety concerns involving aggression toward others and self-harming and other maladaptive behavior.

19. Both prior to and during the course of the most recent claim appeal, clinicians from KGH Therapy had numerous written and oral communications with Defendant in order to convey John K.'s individualized needs; however, Defendant disregarded the medical necessity for behavioral therapy provided by KGH as well as John K.'s other treating doctors, including the doctors at Lurie Children's Hospital. Although Defendant utilized medical professionals to offer opinions in relation to John K.'s medical needs, no one involved in rendering a decision on Defendant's behalf ever examined John K.; nor was an independent evaluation of John K.'s needs conducted by Defendant either prior to the claim denial or during the claim appeal.

20. The prior independent external reviewer pointed out, though: "It is noted that with the decrease in ABA therapy, the claimant's behavior worsens, and he has aggression, but it is better controlled with full ABA therapy. Therefore, it is medically necessary that this claimant

7

continue to have ABA therapy." John K.'s condition did not materially change after the independent review and the independent reviewer's opinion has remained relevant with respect to John K.'s overall condition.

21. Defendant's benefit denial and its denial of Plaintiff's appeal demonstrates that Defendant has and continues to ignore Illinois statutory mandates for treatment of autism spectrum disorders. Plaintiff has also been informed and believes that Defendant has a history of denying claims for ABA therapy or has reduced the recommended quantum of therapy that has been prescribed.

**CLAIM FOR RELIEF - ENFORCEMENT OF RIGHTS
AND CLARIFICATIONS OF FUTURE BENEFITS RIGHTS
UNDER ERISA § 502(a)(1)(B) AGAINST HCSC AND THE PLAN**

22. Plaintiff reasserts and realleges the allegations of paragraphs 1 through 21 as if fully set forth herein.

23. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Robert K and Monica K on behalf of their son, John K, are entitled to: (1) enforce their rights under the terms of the Plan, (2) clarify their rights to future benefits under the terms of the Plan, and (3) recover benefits due under the Plan that were wrongfully withheld.

24. As administrator of the benefit Plan at issue, HCSC makes all claims determinations and decides all benefit questions under the Plan. HCSC also funds the payment of benefits under the Plan.

25. At all times relevant hereto, HCSC had an obligation pursuant to the terms of the Plan, pursuant to Illinois law, and in accordance with the fiduciary obligations imposed on it by § 404 of ERISA (29 U.S.C. § 1104) to administer Plaintiffs' claims "solely in the interest of the participants and beneficiaries" and in accordance with the plan terms; and to utilize "higher-than-

8

marketplace quality standards" when rendering claim determinations according to *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 115 (2008).

26. HCSC's refusal to approve reimbursement for ongoing behavioral therapy is and was contrary to the medical evidence provided, contrary to Illinois' legal requirements for treatment of autism spectrum disorders, and places Plaintiff at severe risk of losing the gains he has made, as well as further behavioral deterioration that places him at significant recent of serious self-injury and harm.

27. Due to the ongoing necessity of behavioral therapy covered by the Plan, Plaintiffs are entitled under the terms of the Plan to be reimbursed for the expenses they have incurred since September 8, 2022 to pay for ongoing therapy John K. has received; and Plaintiffs are also entitled to a finding that such services must continue until they are no longer medically necessary.

WHEREFORE, Plaintiffs, Robert K and Monica K seek the entry of an order directing Defendant Health Care Service Corporation to reimburse them for all behavioral therapy expenses they have incurred since September 8, 2022; and that the Court further order Health Care Service Corporation to approve ongoing behavioral therapy services for John K until such time as that level of therapy is no longer medically necessary, and for such further relief as this Court deems just and proper, including an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g), along with prejudgment interest on the expenditure reimbursement owed to Plaintiffs.

Dated: January 31, 2023

By: */s/ Mark D. DeBofsky*
Mark D. DeBofsky
Marie E. Casciari
DeBofsky Law, Ltd.
150 N. Wacker Dr. Suite 1925
Chicago, IL 60606
(312) 561-4040 (phone)
(312) 929-0309 (fax)